J-A12022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES THOMAS SMITH | : | |
| | : | |
| Appellant | : | No. 917 WDA 2018 |

Appeal from the Judgment of Sentence Entered December 19, 2017
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000532-2016

BEFORE:  BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 09, 2019**

Appellant, James Thomas Smith, appeals from the Judgment of Sentence entered in the Armstrong County Court of Common Pleas after a jury found him guilty of Rape, Involuntary Deviate Sexual Intercourse ("IDSI"), Burglary, Aggravated Indecent Assault, Criminal Trespass, Criminal Mischief, and Kidnapping.[1]  On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions.  After careful review, we affirm.

We glean the following factual and procedural history from the certified record.  Appellant and the victim had a three-year romantic relationship that was fraught with Appellant's manipulative and controlling behavior, including

---

[1] 18 Pa.C.S. § 3121(a)(2); 18 Pa.C.S. § 3123(a)(2); 18 Pa.C.S. § 3502(a)(1)(ii); 18 Pa.C.S. § 3125(a)(3); 18 Pa.C.S. § 3503(a)(ii); 18 Pa. C.S. § 3304(a)(5); and 18 Pa.C.S. § 2901(a)(2), respectively.

erratic temper tantrums and threats of violence toward the victim and her children. The relationship ended in 2012, and in 2013, the victim obtained a Protection from Abuse Order ("PFA"), which was effective from August 2013 through August 2016. The PFA prohibited Appellant from having any contact with the victim, her children, and her parents; it also excluded Appellant from the victim's residence. Despite the PFA, Appellant continued to contact the victim, and made multiple threats to the victim and her children.

On June 24, 2016, Appellant saw the victim with another man at an ice cream store, and confronted her, stating "I told you what would happen if I ever saw you with anyone, and this is not done. I promise you tonight this will be done. I promise you that it will be over." N.T. Trial, 10/11/17, at 55. Throughout that evening, Appellant sent the victim numerous text messages and voicemails. Appellant also parked his car approximately one half mile from the victim's house, and sat in the woods watching her house all evening.

At approximately 3:00 AM on June 25, 2016, Appellant broke into the victim's home using a pipe wrench. He then entered her bedroom, and locked the bedroom door. The victim went to the bathroom at one point with her cell phone and texted the neighbors for help.[2] When she returned to the bedroom, Appellant raped her. After several hours, Appellant took the victim's cell

---

[2] The neighbors and the victim had an agreement that if the victim needed help because of Appellant, she would text them and they would come over. Unfortunately, that night the neighbor she texted was out of town and did not receive the text until the morning.

phone, told her to lie if anyone asked why her door frame was broken, and forced her to drive him to his car.

The Commonwealth arrested Appellant and charged him with the above crimes.[3] The Criminal Information for the Rape, IDSI, and Aggravated Indecent Assault (collectively referred to as the "Sexual Assault Charges") alleged that Appellant engaged in sexual acts with the victim as a result of verbal threats he made before he attacked her and while he attacked her.

A jury trial commenced on October 11, 2017, at which the victim and Appellant testified. The jury found Appellant guilty of Rape, IDSI, Burglary, Aggravated Indecent Assault, Criminal Trespass, Criminal Mischief, and Kidnapping. The court sentenced Appellant to 216 to 432 months' imprisonment.

Appellant filed Post-Sentence Motions, which the trial court denied. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. "In criminal trials the proof offered by the Commonwealth must measure up to the charge made in the" Information. Here, when outlining the factual basis supporting the sex offenses, the Information specifically alleged that [Appellant] threatened [the victim] by "telling her that he would not harm her as long as she complied" with his sexual requests. At trial, however, the Commonwealth failed to prove that allegation. Thus, the "proof" failed to "measure up to the charge made in the"

---

[3] The Commonwealth also charged Appellant with Stalking. *See* 18 Pa.C.S. § 2709.1(a)(1). The jury acquitted him of that charge.

Information. Was the evidence insufficient to support [Appellant's] sex convictions?

2. The predicate crime for the Burglary charge was this: [Appellant] entered [the victim]'s home with the intent to commit a sex offense. But, at trial, the Commonwealth failed to prove that [Appellant] committed a sex offense. Was the evidence also insufficient to support [Appellant's] Burglary conviction?

Appellant's Br. at 3 (quotation marks in original).

In his first issue, Appellant contends that because the Commonwealth failed to present evidence at trial to support one of the allegations in the Criminal Information, the Commonwealth failed to present sufficient evidence to support the conviction of the Sexual Assault Charges. In particular, Appellant argues that the Criminal Information alleges that Appellant forcibly compelled the victim to engage in the sexual activity because of the threats he made **while** he was sexually assaulting her. Appellant concludes that since the victim only testified to threats Appellant made **before** he sexually assaulted her, the Commonwealth failed to establish the allegation of forcible compulsion. Appellant's Br. at 13-18. Appellant primarily relies on *Commonwealth v. Lambert*, 313 A.2d 300 (Pa. Super. 1973).

We review the allegations in the Criminal Information and the evidence at trial with the following principles in mind. The purpose of a criminal information is "to advise the accused of the allegations and the crimes charged, to give sufficient notice to allow the opportunity to prepare a defense, and to define the issues for trial." *Commonwealth v. Taylor*, 33 A.3d 1283,

1287 (Pa. Super. 2011) (citation omitted). "In criminal trials, the proof offered by the Commonwealth must measure up to the charge made in the indictment.[4]" *Lambert*, 313 A.2d at 301.

While the information is the "star and compass of a criminal charge," it should not be read in a hyper-technical manner. *Commonwealth v. Nabried*, 399 A.2d 1121, 1122 (Pa. Super. 1979) (*en banc*); *Taylor*, 33 A.3d at 1287. "The court must consider the act in the context in which it is alleged to have occurred." *Nabried*, *supra* at 1123 (citation omitted). "Extra information . . . describing the events surrounding the commission of the crime[s is] mere surplusage." *Commonwealth v. Brandup*, 366 A. 2d 1233, 1235 (Pa. Super. 1976). Thus, "evidence which var[ies] from the [surplusage in the Information] constitute[s], at most, an innocuous variance, harmless in effect." *Id.*

Applying these principles, this Court in *Nabried* upheld Appellant's conviction for Corruption of Minors. 399 A.2d at 1122-23. The Criminal Information alleged that it was the appellant who removed the victim's clothing and at trial the victim testified that she was the one who removed her clothing. *Id.* This Court found the discrepancy harmless in effect because the removal of the victim's clothing "was accomplished through the instigation and acts of appellant." *Id.* at 1123. This Court agreed with the trial court's finding

---

[4] A criminal information is a formal criminal charge made by a prosecutor without a grand-jury indictment. Black's Law Dictionary (10th ed. 2014).

that the Criminal Information was "sufficient to give the defendant notice of the nature of the charges against him." ***Id.***

In this case, the portion of the Criminal Information for the Sexual Assault Charges at issue provides:

> . . . [Appellant] did engage in [the Sexual Assault] with [the Victim], by threat of forcible compulsion, **namely told her that he would not harm her as long as she complied. He threatened her and her children in the past with physical harm, that would prevent resistance by a person of reasonable resolution**, in violation of [Crimes Code dealing with Sexual Assaults.]

Criminal Information, Counts I, II and IV (emphasis added).

Even a cursory review of the Criminal Information refutes Appellant's claim. The Criminal Information clearly and unambiguously alleges that Appellant used "forcible compulsion" as a result of threats Appellant made **before** and **while** he sexually assaulted the victim. Appellant ignores the last sentence of the counts for Sexual Assault that alleges that Appellant "threatened [the victim] and her children in the past with physical harm, that would prevent resistance by a person of reasonable resolution." Thus, Appellant's argument that the Commonwealth failed to establish the forcible compulsion because the victim did not testify that Appellant threatened her while he sexually assaulted her has no foundational support.

Appellant's reliance on ***Lambert***, ***supra,*** is also misplaced. In that case, the Criminal Information alleged that the defendant committed the crime of Corruption of Minors because he gave a minor "dangerous drugs." 313 A.2d at 300. At trial, the Commonwealth did not prove that the "pills were

dangerous drugs." **Id.** This Court concluded that since the evidence at trial did not support the allegation in the Criminal Information that the defendant gave the minor "dangerous drugs," the trial court erred in not granting the motion in arrest of judgment. **Id.** at 301.

In this case, the Criminal Information alleged both prior threats and threats while Appellant sexually assaulted the victim to establish "forcible compulsion." Since the Commonwealth proved prior threats at trial, the Commonwealth established the element of "forcible compulsion." In **Lambert,** the Commonwealth only made one allegation regarding the substance that the defendant gave to the minor to establish the charge of Corruption of a Minor and when the Commonwealth failed to establish that one allegation to support the charge, we held that the Commonwealth failed to meet its burden. **Id.** In this case, the Commonwealth alleged threats at two different time periods to establish "forcible compulsion." Since the elements of the charge only require the Commonwealth to establish "forcible compulsion" at one time, the fact that the Commonwealth failed to establish the allegations at two periods of time does not mean that the Commonwealth failed to establish any type of forcible compulsion.

Accordingly, we agree with the trial court's conclusion that Appellant was aware of the Commonwealth's allegations, and was not surprised or prejudiced by the Commonwealth's evidence that "measure[d] up to the charge." **Id.** Appellant's claim warrants no relief.

In his second issue, Appellant asserts that the evidence is insufficient to support his Burglary conviction because the Commonwealth failed to establish the intent element of the crime. Appellant's Br. at 21-23. Appellant also avers, based on the argument set forth in his first issue, that "the evidence supporting [his] sex convictions was insufficient as a matter of law [so] the evidence did not support the Burglary charge's predicate offense(s)." *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "[O]ur standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Hutchinson*, 164 A.3d 494, 497 (Pa. Super. 2017) (citation omitted). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.* (citation omitted).

Pursuant to the Crimes Code, "[a] person commits the offense of [B]urglary if, with ***the intent to commit a crime therein***, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present."   18 Pa.C.S. § 3502(a)(1)(ii) (emphasis added).   Contrary to Appellant's argument, the Commonwealth does not have to prove a "predicate offense," rather only the intent to commit a crime within the premises.

The trial court summarized the evidence offered by the Commonwealth to prove that Appellant had the intent to commit a sexual crime at the time he entered the victim's home:

> There is sufficient evidence in the record indicating that [Appellant] threatened [the victim] earlier in the day on June 24, 2016.  He then appeared at her home early in the morning the next day with a pipe wrench he brought specifically to break the lock on the door if he could not otherwise get in.  There is sufficient evidence to prove that [Appellant] went to [the victim's] home, after having threatened her, to have sex with her no matter whether she consented.  That evidence establishes the element of intent at the time [Appellant] entered [the victim's] home.

Trial Ct. Op. at 6.

Following our review of the record, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient for the jury to reasonably conclude that Appellant had the specific intent to commit a sexual crime when he entered the victim's home.  Appellant threatened the victim the evening of June 24,

2016, stating *inter alia*, "I promise you tonight this will be done"; texted and left messages for the victim multiple times later that evening; parked in a secluded area away from the victim's home; and brought a pipe wrench to the victim's home, which he use to break into the back door of the victim's house. Accordingly, the evidence was sufficient to establish that Appellant had the specific intent to commit a sexual crime, and Appellant is not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2019