COMMONWEALTH of Pennsylvania

v.

Donte TAYLOR, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 8, 2011.

Filed Dec. 14, 2011.

Suzanne M. Swan, Chief Public Defender and John Ciroli, Jr., Public Defender, Pittsburgh, for appellant.

Margaret Ivory, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA and PLATT,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Appellant, Donte Taylor, appeals from the judgment of sentence entered on May 19, 2010, following his conviction of two counts of possession of a controlled substance with intent to deliver, and two counts of possession of a controlled substance by a person not registered to do so.[1] We affirm.

Appellant was arrested and charged with two counts each of possession with intent to deliver a controlled substance and possession of a controlled substance. Appellant filed a suppression motion, and following a hearing on February 24, 2010, the motion was denied. A bench trial followed, and the notes of testimony from the suppression hearing were incorporated.

The facts of the case are as follows. On July 2, 2006, Detective Edward Fallert, Detective Mark Goob, and Sergeant Jason Snyder of the Pittsburgh Police were patrolling Creswell Street, in Pittsburgh, in an unmarked car and in an undercover capacity. At approximately 12:27 a.m., they observed appellant and another man sitting alone on a wall; appellant was holding a potato chip bag. (Notes of testimony, 2/24–25/10 at 110.) As the officers approached, appellant crumpled the bag and put it down to his side. Appellant then tossed the bag onto the ground. (Id. at 112.) At this point, the officers, having viewed what just transpired, got out of their vehicle and identified themselves as police officers.

Detective Fallert testified that based on his training and experience, he was aware that drug dealers sometimes conceal drugs in potato chip bags or iced tea cartons. (Id. at 18.) They typically hide them at a nearby location and retrieve them when they need to make a sale. Detective Fallert picked up the potato chip bag and discovered that it contained 68 bags of crack cocaine and 55 bags of heroin. (Id. at 21, 38.) The chip bag also contained a bag of rice which, Detective Fallert explained, is commonly used to absorb water to prevent heroin from getting wet. (Id. at 22.) According to Detective Fallert, the packaging of the drugs was consistent with drugs that are packaged for sale. (Id. at 42–43.) Thus, based on his training and experience, he believed the potato chip bag contained something illegal based on "[t]he way [appellant] acted with it." (Id. at 19.) At this point, appellant was placed under arrest. (Id. at 23.) A search of appellant's person revealed $127 and a cell phone; no paraphernalia was recovered. (Id. at 24.) The Commonwealth also presented the expert testimony of Detective Anthony Scarpine. Detective Scarpine testified that a hypothetical set of facts, identical to those recited above, led him to conclude that the drugs were packaged and possessed with intent to sell them. (Id. at 150, 152–153, 159.)

Appellant testified at trial and stated that Ernest Turner handed him the potato chip bag as they were sitting on the wall. (Id. at 165–166.) Appellant looked inside the bag and observed the drugs. (Id. at 166.) Appellant explained that he did not want the bag and only held it for a few seconds before the police apprehended him. (Id. at 166–168.) Appellant averred

---

* Retired Senior Judge assigned to the Superior Court

1. 35 Pa.S.A. §§ 780–113(a)(30) and 780–113(a)(16), respectively.

that he did not intend to take the drugs or to sell the drugs.

Thereafter, appellant was convicted of the aforementioned charges. On May 19, 2010, appellant was sentenced to a term of imprisonment of not less than three nor more than six years for the conviction of possession with intent to deliver heroin, and a consecutive sentence of five to ten years' imprisonment for the conviction of intent to deliver cocaine; the simple possession convictions merged for sentencing purposes. Post-sentence motions were filed on June 1, 2010 and denied by the trial court on July 8, 2010. This appeal followed, and the trial court issued on opinion on January 19, 2011.

The following issues are before us for review:

I.  DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED SUPPRESSION OF FORCIBLY ABANDONED PHYSICAL EVIDENCE AND STATEMENTS MADE TO POLICE DURING AN ILLEGAL DETENTION?

II. DID THE COMMONWEALTH FAIL TO MEET ITS BURDEN OF PROOF WHEN IT ADDED AN ELEMENT TO TWO OF THE CRIMES CHARGED IN APPELLANT'S CRIMINAL INFORMATION, AND THEN FAILED TO OFFER ANY EVIDENCE OF THAT ELEMENT AT TRIAL?

III. DID THE COMMONWEALTH FAIL TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] POSSESSED NARCOTICS WITH THE INTENT TO DELIVER THEM?

Appellant's brief at 5.[2]

Appellant first argues that the trial court erred in denying his motion to suppress. We begin our analysis of the suppression issue with our standard of review:

[I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010), quoting *Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003).

Appellant's argument is premised on his belief that he was illegally detained, or "seized," by the police within the meaning of the Fourth Amendment of the Federal Constitution, and then forced to abandon the potato chip bag. Appellant further argues that because of this forced abandonment, any evidence gathered as a result should have been suppressed.

We note at the outset that it is "axiomatic that a defendant has no standing to contest the search or seizure of items

---

**2.** We note with disapproval that appellant's brief was not properly prepared. In the middle of the argument section on page 11, an extended excerpt consisting of 17 pages of the trial court opinion, his statement of errors complained of on appeal and his proof of service are erroneously inserted.

which he has voluntarily abandoned." *Commonwealth v. Bennett,* 412 Pa.Super. 603, 604 A.2d 276, 278 (1992), quoting *Commonwealth v. Windell,* 365 Pa.Super. 392, 529 A.2d 1115, 1117 (1987). With that being said, our supreme court has instructed that:

> initial illegality taints the seizure of the evidence ... [because] in such a situation it cannot be said that there was a voluntary abandonment or relinquishment of the evidence.... No improper or unlawful act can be committed by the officers prior to the evidence being abandoned.

*Commonwealth v. Shoatz,* 469 Pa. 545, 554, 366 A.2d 1216, 1220 (1976). Thus, in the instant case, the question becomes whether there was any illegality on the part of the police officers before appellant abandoned the potato chip bag.

In order for a suspect to be "seized" by the police within the meaning of the Fourth Amendment, given the circumstances, a reasonable person would have to believe that he was not free to leave. *Commonwealth v. Matos,* 543 Pa. 449, 451–452, 672 A.2d 769, 770–771 (1996). It is undisputed that when the police first approached appellant, they were in an unmarked car and undercover; but despite that, appellant was able to identify them as police officers. (Notes of testimony, 2/24–25/10 at 17, 83–84.) It is also undisputed that while the police officers were in their vehicle, they had no interaction whatsoever with appellant; they were merely observing him. (*Id.* at 15, 83–84.) The Commonwealth's evidence shows that appellant then tossed the potato chip bag, at which

point the officers exited their vehicle and approached appellant.[3] (*Id.* at 20.) None of this police conduct rises to the level of illegality.

As this court has held, "[a] police cruiser passing through the neighborhood on routine patrol does not amount to police coercion compelling the abandonment of contraband." *Commonwealth v. Pizarro,* 723 A.2d 675, 679–680 (Pa.Super.1998). While appellant may have felt uncomfortable being watched by three people in a car that he knew to be a police vehicle, we cannot find such amounted to police coercion or would cause a reasonable person to believe he was not free to leave. Appellant discarded the potato chip bag at his own volition. Therefore, the trial court properly denied appellant's motion to suppress.

▬ In his second issue on appeal, appellant contends that because the criminal information alleged that he had previously been convicted of drug-related offenses, and the Commonwealth failed to present any evidence of prior convictions at trial, the Commonwealth failed to meet its burden of proof, and his convictions ought to be reversed. Appellant frames this as a sufficiency of the evidence argument, but this is only so if we first agree that the Commonwealth's allegations of prior drug-related convictions in the criminal information are elements of the crimes with which he was charged. We do not agree.

There is no dispute that the criminal information in the instant case sufficiently set forth the elements of the crimes. Appellant asserts, however, that because in

---

**3.** Appellant contends that the police exited their vehicle and began to approach him first, and it was only at this point that he tossed the potato chip bag. (Notes of testimony, 2/24–25/10·at 84.) Appellant argues that we have the ability to ignore the Commonwealth's evidence in favor of his own, but our standard of review is clear: "we may consider only the

evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole," *Cauley,* 10 A.3d at 325. As appellant's evidence on this point directly contradicts the Commonwealth's, we have no choice but to not consider it.

counts one and three of the criminal information it was alleged that appellant "was previously convicted of an offense under clause (30) of subsection (a) of Section 13 of the Controlled Substance, Drug, Device and Cosmetic Act ...," this became an element of the crime that had to be proven at trial. (*See* appellant's brief at 15.) Appellant primarily relies on *Commonwealth v. Lambert,* 226 Pa.Super. 41, 313 A.2d 300 (1973), and *Commonwealth v. Madison,* 263 Pa.Super. 206, 397 A.2d 818 (1979), for this assertion.

In *Lambert,* the defendant was specifically charged with "corrupting the morals [of a minor] by furnishing dangerous drugs...." *Lambert,* 313 A.2d at 301. This court found that by "specifically charging the manner by which appellant was alleged to have corrupted the morals of these minors, the Commonwealth was required to prove that appellant did furnish them with dangerous drugs." *Id.* Similarly, in *Madison,* the defendant was charged with burglary "with the intent to commit theft ...," even though "the Crimes Code defines burglary as entry with the intent to commit a crime any crime[, and] the Commonwealth is not required to specify in the indictment or information what crime the accused allegedly intended to commit." *Madison,* 397 A.2d at 822. This court concluded that because of the specificity of the charge, the Commonwealth was obligated to prove intent to commit theft. *Id.* Both of these cases are distinguishable from the instant case.

In the two above-cited cases, the Commonwealth did not add new elements to the charged crimes; it instead added greater specificity to the elements than what is found in the statute. Because "[t]he purpose of the information is to advise the accused of the allegations and the crimes charged, to give sufficient notice to allow the opportunity to prepare a defense, and to define the issues for trial," *Commonwealth v. Kisner,* 736 A.2d 672, 674 (Pa.Super.1999), this court found that the Commonwealth must be held to the greater specificity. However, in the instant case, appellant does not seek to hold the Commonwealth to a higher degree of specificity in terms of the statutory elements, but instead seeks to require the Commonwealth to prove elements of the crime wholly beyond what is found in statute. This, the Commonwealth is not required to do.

■ As we have previously held, "[t]he information should be read in a common sense manner, rather than being construed in an overly technical sense." *Commonwealth v. Badman,* 398 Pa.Super. 315, 580 A.2d 1367, 1371 (1990) (citations omitted). We believe it to be common sense that whether appellant had committed a crime in the past had no bearing on his guilt or innocence at this trial; rather, such would affect the grading of his offense. Further, evidence of prior crimes is generally not admissible at trial. *See* Pa.R.E., Rule 404(b)(1), 42 Pa.C.S.A. Based on the foregoing, we find no merit to appellant's assertion, and believe the trial court acted appropriately.

■ Finally, in his third issue for appeal, appellant contends that the Commonwealth failed to introduce evidence sufficient to prove that he had the intent to deliver the contraband within the meaning of 35 Pa.S.A. § 780–113(a)(30). Our standard of review is clear:

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan,* 932 A.2d 226, 231 (Pa.Super.2007) (citation omitted). "Evidence will be

deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer,* 876 A.2d 1029, 1032 (Pa.Super.2005), *appeal denied,* 585 Pa. 685, 887 A.2d 1239 (2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id.* Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle,* 894 A.2d 800, 804 (Pa.Super.2006).

*Commonwealth v. Yasipour,* 957 A.2d 734, 745 (Pa.Super.2008).

■ To begin, we note that in order to prevail on a charge of possession of a controlled substance with intent to deliver, the Commonwealth must prove, beyond a reasonable doubt, that the accused possessed a controlled substance *and* that the accused had the intent to deliver the controlled substance. If both are not proven at trial, the accused must be found not guilty.

In the instant case, viewing the facts in a light most favorable to the Commonwealth as verdict-winner, the first element, possession, is quickly satisfied: the police officers observed appellant holding a potato chip bag that contained crack cocaine and heroin. In order to determine if there was sufficient evidence to convict appellant on the second element, intent to deliver, our supreme court has stated:

> [When] the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors … [including] the manner in which

the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and larges [sic] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Ratsamy,* 594 Pa. 176, 183, 934 A.2d 1233, 1237–1238 (2007) (quotations and citations omitted). Despite appellant's arguments to the contrary, these are not mandatory factors that must be met in order for sufficient evidence to be present; they are factors that a court may examine to help determine whether or not a defendant had the intent to deliver. As the trial court correctly noted, "all facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver." (Trial court opinion, 1/19/11 at 12, citing *Commonwealth v. Ramos,* 392 Pa.Super. 583, 573 A.2d 1027, 1032 (1990).)

Herein, appellant was in possession of a large amount of individually packaged contraband, which had a street value of over $1,000. The contraband was inside of a potato chip bag which Detective Fallert explained is an item known for being used to conceal drugs. Testimony was presented that the amount of drugs recovered indicated they were meant for delivery. Further, the bag contained rice, which is commonly used to protect the drugs from being damaged, an indication that the drugs would be exposed to outside elements which would occur in street sales. No paraphernalia was recovered from appellant's person. Expert testimony was also presented that the scenario at hand

indicated the drugs were possessed with intent to distribute. Based on this evidence, and indeed the totality of the circumstances, we are of the opinion that the record does contain support for the convictions, and as a result, the trial court did not err in denying relief on this point.

Judgment of sentence affirmed.