J-S41021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARIUS WALKER | |
| Appellant | No. 157 MDA 2015 |

Appeal from the Judgment of Sentence October 31, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000823-2014

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 21, 2015**

Appellant, Darius Walker, appeals from the judgment of sentence imposed following his conviction[1] of one count each of possession with intent to deliver (heroin) (PWID),[2] possession of drug paraphernalia,[3] corruption of minors,[4] and two counts of criminal use of a communications facility (F-3).[5] After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] A charge of intimidation of a witness was dismissed before trial.

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(32).

[4] 18 Pa.C.S.A. § 6301(a)(1)(i).

[5] 18 Pa.C.S.A. § 7512.

At trial, Brandon Love testified that Appellant paid him to drive him and three other passengers in Love's car from Williamsport to Philadelphia on March 24, 2014. When they arrived in Philadelphia, Love dropped Appellant and A.P., a juvenile passenger, off at a house. When they entered the house, Appellant was carrying a black duffle bag; when they emerged from the house, fifteen to twenty minutes later, he was carrying only a plastic bag.

On the way back to Williamsport, in the early morning hours of March 25, 2014, Love's vehicle was stopped by police for speeding. Police officers uncovered 30 unmarked bundles (421 bags) of heroin from the left front coat pocket of A.P., the back-seat driver-side passenger. Drug paraphernalia, consisting of a stamp, wax wrappers and rubber bands, was also found in the trunk of the vehicle. Police found cellphones and a small amount of currency on Appellant; he did not have any drugs on his person at the time of the stop.

On October 30, 2014, a jury convicted Appellant of the previously noted offenses. He was sentenced (at his request) the next day to a term of not less than three nor more than seven years' incarceration. Appellant filed an unsuccessful post-sentence motion. Appellant also filed a timely notice of appeal.[6]

_____

[6] Appellant filed a concise statement of errors, on Feb 19, 2015. **See** Pa.R.A.P. 1925(b). The trial court filed an opinion on February 23, 2015, *(Footnote Continued Next Page)*

J-S41021-15

On appeal, Appellant presents four questions for our review:

(1)     Did the court err when it allowed the Commonwealth to introduce improper propensity evidence in violation of Pa.R.E[]. 404(b), specifically the recorded telephone conversations between [Appellant] and unknown parties during his incarceration?

(2)     Did the court err when it denied the motion for judgment of acquittal as the evidence was insufficient to prove [Appellant] possessed controlled substances with the intent to deliver when the controlled substances in question were not in [Appellant's] possession but in physical possession of another?

(3)     Did the court err when it denied the motion for judgment of acquittal as the evidence was insufficient to prove the Criminal Use of a Communication Facility when the Commonwealth failed to show that the text messages were related to the commission or attempted commission of any crime?

(4)     Did the court err when it denied the motion for judgment of acquittal as the evidence was insufficient to prove the Corruption of Minors charge as [Appellant] was merely present in the vehicle and did not entice the minor to engage in criminal activity?

(*See* Appellant's Brief, at 12).

In his first issue, Appellant contends that the trial court erred in admitting the content of phone conversations recorded after his arrest, while he was incarcerated at the Lycoming County Prison. Specifically, he asserts that the conversations were inadmissible under Pa.R.E. 404(b), as their

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

referencing its order and opinion filed January 20, 2015. *See* Pa.R.A.P. 1925(a).

probative value was substantially outweighed by the unfair prejudice. We

disagree.

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.,* evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402[.]
>
> A long-accepted exception to this general rule of admissibility, which is reflected in Rule 404(b)(1) of the Pennsylvania Rules of Evidence, states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Character evidence (whether good or bad) is, of course, **relevant** in criminal prosecutions; that is why an accused has the right to introduce evidence of good character for relevant character traits. *See* Pa.R.E. 404(a)(1). Evidence of separate or unrelated "crimes, wrongs, or acts," however, has long been deemed inadmissible as character evidence against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, *i.e.,* because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity. Because the fear against which this exception to the general rule of relevance/admissibility is aimed concerns use of prior crimes to show bad character/propensity, a series of "exceptions to the exception" (to the rule of relevance) have been recognized. Thus, as Rule 404(b)(2) reflects, evidence of "other crimes, wrongs, or acts" may be admitted when relevant for a purpose other than criminal character/propensity, including: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. This list is not exhaustive. Pa.R.E. 404(b) **Comment**. For instance, this Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the

context or complete story of the events surrounding a crime. [ ]
***see*** [ ] ***Commonwealth v. Lark***, 518 Pa. 290, 543 A.2d 491,
497 (1988) (evidence of other crimes may be relevant and
admissible to show "part of the chain or sequence of events
which became part of the history of the case and formed part of
the natural development of the facts").

***Commonwealth v. Dillon***, 925 A.2d 131, 136-37 (Pa. 2007) (most case

citations omitted) (emphasis in original). Pennsylvania Rule of Evidence

404(b) provides in pertinent part:

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or
other act is not admissible to prove a person's character in
order to show that on a particular occasion the person
acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible
for another purpose, such as proving motive, opportunity,
intent, preparation, plan, knowledge, identity, absence of
mistake, or lack of accident. In a criminal case this
evidence is admissible only if the probative value of the
evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b) (1), (2).

Here, the relevant jailhouse conversations include Appellant discussing

who the "good" customers are and also requesting that other people work

the phone to contact customers on his behalf. (***See*** Commonwealth Exhibit

21, at 6-8).

In ***Commonwealth v. Kinard***, 95 A.3d 279 (Pa. Super. 2014) (*en

banc*), the defendant was also convicted of PWID. At trial, the court granted

the Commonwealth's motion, filed pursuant to Pa.R.E. 404(b), to admit into

evidence recordings of several telephone conversations defendant made to

unidentified individuals while incarcerated and awaiting trial. *See id.* at 282. In those conversations, defendant used code language to discuss the sale of narcotics. Also at trial, a police officer testified as an expert on the code or slang terms used by drug dealers in conversations in order to avoid detection and apprehension by law enforcement. *See id.* On appeal, our Court affirmed the court's admission of the recordings, finding that:

> [T]he telephone calls demonstrate appellant's knowledge and awareness of drug trafficking and support [the co-defendant's] testimony that appellant is the supplier and that he was not innocently in the [co-defendant's] house, but rather was there conducting business. The calls also reveal a common plan, scheme, and design. As the trial court stated, the calls demonstrated that appellant was engaged in ongoing drug transactions even after he was arrested. The drug transactions were similar, if not identical, to the drug transactions for which he was charged. The calls also reveal appellant's knowledge of and use of coded language. Again, the [co-defendant] testified that she used coded language when she asked appellant for drugs. [The co-defendant] asked appellant for "ten twenties." Appellant, in turn, met her request and supplied the drugs. The coded language used during the taped phone calls was similar and demonstrated not only that appellant understood the code used by others but appellant also used the language himself.
>
> Furthermore, the bad acts occurred in a pattern over three months after his arrest. The testimony was relevant in establishing the chain of events and course of criminal conduct of appellant. . . . We find no abuse of discretion in the trial court's finding that the calls fell within the parameters which define admissible limits of other criminal activity.

*Id.* at 285 (footnote and citations omitted).

Here, similar to *Kinard*, Appellant's recorded jailhouse phone conversations with unidentified individuals are relevant and admissible under Rule 404(b)(2) because they establish Appellant's consciousness of guilt for

PWID, and intent to continue to sell, showing his active involvement in the distribution of narcotics. Moreover, the content of the conversations supports the fact that Appellant constructively possessed the heroin found during the car stop.

The calls were also bolstered by the expert testimony of Detective Alberto Diaz, who translated the slang used during the calls, testifying that such terminology is typically used by drug dealers to avoid suspicion by law enforcement and who concluded that Appellant possessed with intent to deliver, noting that "[Appellant's] got a couple people that he was talking to from prison running his business and collecting money for him." (N.T. Jury Trial, 10/30/14, at 180; *see also id.* at 180-83).

While the content of the calls may have been "prejudicial," as all evidence against a defendant commonly is, when balancing the probative value versus the prejudicial nature of the evidence, the trial court properly admitted them to establish a common scheme, knowledge, intent, plan or design, and absence of mistake under Rule 404(b). Appellant's first claim does not merit relief.

In his second issue, Appellant claims that because the Commonwealth failed to show that he had drugs in his possession or that he had equal access to or joint control over the heroin found in A.P.'s possession, there was insufficient evidence to convict him of possession with the intent to deliver. (*See* Appellant's Brief, at 18-20). We disagree.

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Randall*, 758 A.2d 669, 674 (Pa. Super. 2000), *appeal denied*, 764 A.2d 1067 (Pa. 2000) (citations omitted).

"[I]n order to prevail on a charge of possession of a controlled substance with intent to deliver, the Commonwealth must prove, beyond a reasonable doubt, that the accused possessed a controlled substance and that the accused had the intent to deliver the controlled substance." *Commonwealth v. Taylor*, 33 A.3d 1283, 1288 (Pa. Super. 2011), *appeal denied*, 47 A.3d 847 (Pa. 2012) (emphasis omitted).

Because Appellant was not in actual possession of the heroin, the Commonwealth had to establish that he constructively possessed the contraband. Constructive possession has been defined as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013) (citation omitted).

In determining whether there is sufficient evidence to support a PWID conviction, "all facts and circumstances surrounding the possession are relevant and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." *Commonwealth v. Drummond*, 775 A.2d 849, 853-54 (Pa. Super. 2001), *appeal denied*, 790 A.2d 1013 (Pa. 2001) (citation omitted).

Here, Appellant, a co-passenger in a car with A.P., had access to the drugs. Moreover, evidence at trial established that: (1) Appellant had gone to Philadelphia to get drugs; (2) Appellant traded a rifle for the drugs; (3) Appellant had asked A.P. to hold the drugs for him since A.P. was a juvenile and "would get less time" if he were caught; (4) Appellant and A.P. were planning to sell the drugs in Williamsport; and (4) it is common for heroin traffickers to go to a source city like Philadelphia and then bring the drugs back to Williamsport to sell at higher prices. (*See* N.T. Jury Trial, 10/30/14, at 54-56, 172).

In addition, Appellant's recorded jailhouse telephone conversations, (*see id.* at 125; *see also* this memorandum, *supra* at 3-5), established that he had been selling drugs prior to his incarceration and continued to supervise the sale of drugs through others while he was in prison. (*See* Trial Ct. Op., at 8; *see also* Commonwealth's Brief, at 8). This was relevant to the finding that Appellant constructively possessed the heroin with intent to continue to sell to his regular customers, thus supporting his PWID conviction.

Accordingly, based on this evidence, viewed in the light most favorable to the Commonwealth, it was reasonable for the jury to conclude that Appellant had constructive possession of the heroin, was planning to sell it in Williamsport, and was guilty of PWID. *See Taylor*, *supra* at 1288. Appellant's second claim does not merit relief.

In his third claim, Appellant asserts that because the Commonwealth failed to present corroborating evidence that the text messages sent and received by him were related to the commission or attempted commission of any crime, there was insufficient evidence for his conviction of criminal use of a communication facility. (*See* Appellant's Brief, at 20-21). We disagree.

Preliminarily, beyond the mere bald assertion, Appellant fails to develop any argument supported by pertinent authority that additional corroboration or evidence of "physical interactions" was required. (*Id.* at 21; *see also id.* at 20-21.) *See* 18 Pa.C.S.A. § 7512. Accordingly, Appellant's claim is waived. *See* Pa.R.A.P. 2119(a), (b). Moreover, it would not merit relief.

The Crimes Code defines the offense of criminal use of communication facility in relevant part as follows:

> **(a) Offense defined.**—A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission **or the attempt** thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S.A. § 7512(a) (emphasis added). A cellular telephone is considered a communication facility under section 7512. *See* 18 Pa.C.S.A. § 7512(c) (communication facility defined as "a public or private

instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data . . . including a telephone.").

Instantly, the Commonwealth charged Appellant with violating section 7512, alleging that he used a telephone to facilitate drug transactions that were to occur in Williamsport following his purchase of heroin in Philadelphia on March 24. Specifically, two text messages, sent and received by Appellant on his cell phone on the evening of March 23, 2014, indicated he was planning to sell drugs to third persons on his return to Williamsport.

The texts included the term "grab" and "bun," which are drug jargon for "getting the product that is being sold" and "ten bags of heroin," respectively.

When viewed in the context of the totality of the evidence presented at trial, the text messages show that Appellant knowingly used his cellphone in an effort to facilitate or in an attempt to complete drug transactions.

The trial court found that the text messages sent and received by Appellant on March 23, 2014, constituted evidence of two people requesting drugs from Appellant and his making arrangements to deliver them. (***See*** Commonwealth Exhibits 25, 26; ***see also*** Trial Ct. Op., at 4-7). On independent review, we find that the record supports the trial court's finding that the reported conversations, while informal and colloquial in the manner of text messages, both plainly document attempts to buy drugs.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences, we conclude that the jury as the trier of fact properly found that each and every element of the offense of criminal use of a communications facility as charged was established beyond a reasonable doubt. **See Randall**, **supra** at 674. Appellant's third claim does not merit relief.

In his fourth and final claim, Appellant contends that there was insufficient evidence to convict him of the charge of corruption of minors. (**See** Appellant's Brief, at 22-23). He maintains that he neither enticed nor encouraged A.P. to possess the heroin or to smoke marijuana. (**See id.**). Appellant claims that his "mere presence in the vehicle did not corrupt A.P.'s morals." (**Id.** at 22). We disagree.

The crime of corruption of minors is defined in pertinent part as follows:

> (a)  (1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1)(i).

The record confirms that Appellant was not "merely present." At trial, A.P. testified that Appellant arranged with him, and others, to drive to Philadelphia to buy drugs. (**See** N.T. Jury Trial, 10/30/14, at 52-60). When

they arrived in Philadelphia, only Appellant and A.P. entered a house. (**See id.** at 53). In A.P.'s presence, Appellant exchanged a gun for heroin and then handed the heroin, packaged in a black bag, to A.P. and told him to hold it. They returned in Love's car to Williamsport. (**See id.** at 54).

On the return trip to Williamsport, Love's car was stopped by the police and A.P. was arrested for possessing heroin. At trial, A.P.'s mother testified that Appellant told her that he had A.P. carry the heroin he (Appellant) had bought in Philadelphia because if they were arrested, A.P. would get less jail time since he was only sixteen. (**See id.**, at 81-82).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we conclude it was more than sufficient to enable the jury to decide that Appellant, at minimum, enticed and encouraged A.P. to aid him in the purchase and transport of heroin with intent to deliver after their return to Williamsport. We further conclude that there was more than sufficient evidence to sustain the jury's conviction of Appellant for corruption of a minor. **See Commonwealth v. Barnette**, 760 A.2d 1166, 1173 (Pa. Super. 2000), *appeal denied*, 781 A.2d 138 (Pa. 2001) (evidence sufficient for corruption of minors conviction where appellant asked juvenile to sign for package containing drugs); **see also Commonwealth v. Slocum**, 86 A.3d 272, 277 (Pa. Super. 2014) (concluding evidence sufficient if knowing, intentional acts of perpetrator **tend** to have effect of corrupting morals of minor).

Judgment of sentence affirmed.

- 13 -

Judge Allen joins the Memorandum.

Judge Lazarus files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015