J. S15026/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STACEY VANCE, | : | |
| | : | |
| Appellant | : | No. 261 EDA 2016 |

Appeal from the Judgment of Sentence January 21, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003515-2009

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 09, 2017**

Appellant, Stacey Vance, appeals from the Judgment of Sentence entered in the Philadelphia County Court of Common Pleas, following his convictions after a bench trial for Possession of a Controlled Substance With Intent to Deliver ("PWID"), Criminal Conspiracy to commit PWID, and Possession of a Controlled Substance.[1]  After careful review, we affirm.

The trial court stated the relevant facts as follows:

The incident in this case took place on February 25, 2009 around 3:55 p.m.  At Appellant's waiver trial, Philadelphia Police Officer Richard Nicoletti testified that he first came into contact with Appellant at this time.  Officer Nicoletti testified that he and his partner traveled to 3544 North 5th Street, Philadelphia, PA to serve a warrant.  Before serving the warrant and with the assistance of a confidential informant ("CI"), the officers conducted a "controlled buy" from the same residence.  The officers gave the CI $20 in prerecorded money and watched from

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 903; and 35 P.S. § 780-113(a)(16), respectively.

a vehicle across the street as the CI knocked on the front door of the residence. Co-defendant, Mr. Santiago, answered the door and, after a brief conversation, both men entered the house. Shortly after, the CI left the residence and returned to the officers, handing over four clear packets that contained crack-cocaine.

The officers then instructed backup officers to execute the search warrant. The police knocked on the door, which was again answered by Mr. Santiago, and entered the home. One officer secured Mr. Santiago while another secured Appellant. Officer Nicoletti stated that he believed Appellant had been sitting on a couch by the front door when the police entered the home. Appellant was searched and $75 and a brown marijuana cigarette were discovered on his person. The $20 of prerecorded money from the CI was part of the $75 found on Appellant. Two clear packets of crack were found on Mr. Santiago. A third person in the home was searched [but] did not possess any money or drugs.

After securing the three persons in the home, officers searched the house. On the first floor, officers found a hollowed out D battery that contained ten clear packets of crack-cocaine. Police also found fifty-seven clear packets of crack-cocaine in a hollow part of a kitchen table leg.

Officer Nicoletti also stated that he had done surveillance on the residence three times prior to when the search occurred and had not seen the Appellant enter or exit the home during that time. Additionally, Officer Nicoletti testified that when Appellant was arrested he stated he did not live in the residence where the warrant was executed. Mr. Santiago, however, did live at that residence. Officer Nicoletti also stated that, while Appellant had been searched at the time of his arrest when the $75 was recovered, an additional $54 was found when Appellant was processed at Curran-Fromhold Correctional Facility.

Trial Court Opinion, dated 8/2/16, at 3-4 (unpaginated; citations omitted).

Following a bench trial on January 21, 2010, the trial court convicted Appellant of PWID, Criminal Conspiracy to commit PWID, and Possession of a Controlled Substance. The trial court immediately sentenced Appellant to

three to six years' incarceration for PWID, and no further penalty on the remaining charges.

Appellant filed a timely Notice of Appeal on January 15, 2016.[2]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's sole issue on appeal challenges the sufficiency of the evidence to support each of his convictions.  **See** Appellant's Brief at 12. Appellant contends that: (1) he did not participate in any sale between the CI and co-defendant Santiago; (2) "no narcotics were found on Appellant's person and he did not attempt to flee during the execution of the warrant[;]" (3) he was "merely present" in the house where the drug sale took place, which is insufficient under **Commonwealth v. Vargas**, 108 A.3d 858 (Pa. Super. Ct. 2014) (*en banc*);[3] and (4) the transfer of the prerecorded buy money found on Appellant's person "could have occurred for a plethora of reasons not related to a drug transaction."  Appellant's Brief at 13-17.

We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light

---

[2] On January 8, 2016, the PCRA court reinstated Appellant's appellate rights *nunc pro tunc* pursuant to a PCRA Petition alleging ineffective assistance of counsel for failing to file a requested appeal.

[3] This Court in **Vargas** rejected a defendant's sufficiency challenge where he claimed that he was merely present in a small hotel room where multiple people operated a "mobile heroin mill" packaging raw heroin for street sales. **Vargas**, **supra** at 869-70.  This Court concluded that Appellant was an active participant in the only activity being conducted in the small hotel room, where drugs were in plain view, and there was no luggage belonging to Appellant in the hotel room or in Appellant's vehicle.  **Id.** at 70.

most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id*. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id*.

To prove the offense of PWID, the Commonwealth must demonstrate beyond a reasonable doubt that: (1) the accused possessed a controlled substance; and (2) the accused had the intent to deliver it to another. *Commonwealth v. Taylor*, 33 A.3d 1283, 1288 (Pa. Super. 2011).

Evidence is sufficient to support a conviction for Possession of a Controlled Substance if the Commonwealth shows that the defendant, "knowingly or intentionally possessed a controlled or counterfeit substance[.]" 35 P.S. § 780-113(a)(16).

Where a defendant is not in actual possession of the recovered contraband, the Commonwealth must establish that the defendant had constructive possession to support the conviction:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. [] We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid

application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (citations omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the drugs. ***Vargas***, ***supra*** at 868-69.

It is insufficient to infer "dominion and control" when the Commonwealth provides only evidence of the defendant's presence. ***See Commonwealth v. Valette***, 613 A.2d 548, 551 (Pa. 1992) (holding mere presence at a place where contraband is found or secreted is insufficient standing alone to prove constructive possession). Moreover, if the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. ***Id***. The power to control the contraband "may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Id***. at 550.

To sustain a conviction for Criminal Conspiracy, the Commonwealth must demonstrate beyond a reasonable doubt that the defendant: (1) entered into an agreement to commit or aid in an unlawful act with another;

(2) with a shared criminal intent; and (3) an overt act in furtherance of the conspiracy was done. *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa. Super. 2013). The conduct of the parties and the totality of circumstances may create a web of evidence linking the defendant to the alleged conspiracy beyond a reasonable doubt. *Id*. at 26. The conspiratorial agreement can be inferred from a variety of circumstances, including the relationship between the parties, knowledge of the crime, participation in the crime, and the circumstances and conduct of the parties. *Id*.

"Once a conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators." *Commonwealth v. Geiger*, 944 A.2d 85, 91 (Pa. Super. 2008). "[E]ach conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design." *Id.* "[A]n overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa. Super. 2005) (citation omitted).

In determining the sufficiency of the evidence supporting the existence of a conspiracy, this Court has identified several relevant factors:

> (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

***Commonwealth v. Ruiz***, 819 A.2d 92, 97 (Pa. Super. 2003) (citations omitted).

The trial court concluded that the Commonwealth had presented sufficient evidence to establish that Appellant had constructively possessed and conspired to sell drugs. Trial Court Opinion at 7-8. We agree.

**Criminal Conspiracy to Commit PWID**

First, the evidence showed that Appellant directly participated in the drug operation. The Commonwealth established circumstantially that Santiago handed Appellant the $20 from the drug sale shortly after the sale before police executed the search warrant. Police officers recovered no money from Santiago, but did recover crack cocaine packets identical to those found in the drug stash locations; police officers recovered marked buy money and a brown marijuana cigarette from Appellant's person, but no crack cocaine packets identical to those found in the drug stash locations. This "division of labor" demonstrates Appellant's active participation in the conspiracy to sell drugs. ***See generally Commonwealth v. $6,425.00 Seized from Esquilin***, 880 A.2d 523, 531 (Pa. 2005) (observing that "[i]t is not unusual for drug dealing confederates to engage in a division of labor, whereby one controls the drugs and the other the money.").

Second, the multiple locations, packaging, and methods of hiding the drug packets also support the deliberate operational arrangement indicating Appellant's participation in the conspiracy.

Although Appellant stated to police that he did not live with Santiago in that home, Appellant admitted that he was neighbor of Santiago and lived across the street. This fact, combined with Santiago permitting Appellant to observe criminal conduct in Santiago's home, supported the inference of a close association or relationship between Appellant and Santiago. This evidence flatly contradicts Appellant's arguments that, similar to the defendant in **Vargas**, he did not participate in the drug sales and was merely present in the house. Accordingly, the Commonwealth presented sufficient evidence to support the Criminal Conspiracy conviction.

**Constructive Possession for PWID**

The evidence also showed that Appellant constructively possessed the drugs and the Commonwealth presented sufficient evidence to support Appellant's PWID conviction.

Appellant jointly and constructively possessed the crack cocaine in the kitchen table leg and the battery. Appellant was sitting on a couch in close proximity to the front door and within five feet of the cabinet where police officers found the hollow battery in plain view containing ten packets of crack cocaine. Also, Appellant was sitting within fifteen feet of the kitchen table with a hollow leg containing an additional 57 identical packets of crack cocaine. Thus, the reasonable inference from these facts is that he had "joint control and equal access." **Valette**, **supra**.

Moreover, insofar as Appellant and Santiago were co-conspirators, the court may impute Santiago's direct possession and sale of the drugs to Appellant as a co-conspirator. **Geiger**, **supra** at 91.[4]

Finally, Appellant claims that there are numerous other innocent explanations for his possession of the proceeds from the drug sale. Appellant is essentially asking this court to view the evidence in the light most favorable to him rather than the Commonwealth as the verdict winner. This argument ignores our standard of review. "We may not weigh the evidence and substitute our judgment for the fact-finder." **Melvin**, **supra** at 39-40.[5]

In light of the above, we conclude that the Commonwealth presented sufficient evidence to support each of Appellant's convictions.

Judgment of Sentence affirmed.

---

[4] Additionally, the record contradicts Appellant's assertion that he did not possess any narcotics: police officers recovered a brown marijuana cigarette from Appellant's person.

[5] Appellant's passing assertions that he did not attempt to flee, which he contends proves he is innocent, are similarly unpersuasive since it is within the province of the fact-finder to weigh the evidence. **See Commonwealth v. Hanford**, 937 A.2d 1094, 1097 (Pa. Super. 2007) (addressing and rejecting a defendant's requested absence of flight as consciousness of innocence jury instruction and stating that a suspect's failure to flee was "open to multiple interpretations, many of which have little to do with consciousness of guilt, and which could actually reflect a strategic choice.").

J. S15026/17

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017

- 10 -